### HOWARD *vs.* THOMAS.

APPEAL FROM THE COURT OF THE SIXTH DISTRICT, THE JUDGE OF THE DISTRICT PRESIDING.

Although a special mortgage be renounced, yet the vendor may exercise his privilege by the executory process, when it appears by evidence, that he was to retain his general lien.

When a deed of sale recites that certain notes or drafts have been given, and when paid, are to be in discharge or payment of the price of the object sold; in case of non-payment, the vendor can obtain his order of seizure and sale on the deed and vendor's privilege, by showing that the notes or drafts remain unpaid.

This is an injunction suit to stay proceedings of the defendant, by order of seizure and sale.

On the    day of May, 1829, Major Thomas sold to the defendant a tract of land in the parish of Rapides, for seventeen hundred and fifty dollars, with ten per centum interest from the first of March, 1828, until paid. The defendant and one A. Holmes, gave their two promissory notes for five hundred and eighty-three dollars and thirty three cents each, payable in one and two years, with interest from the first of March, 1829; and also a draft on William Bullitt, of New-Orleans, for seven hundred and fifty dollars (including one hundred and seventy-five dollars interest which had accrued on the whole amount up to March 1st, 1829.) The notes were endorsed by Leroy Stafford, and both them and the draft referred to and specified in the act of sale. According to the evidence, the personal surety or endorser on the note, was given in consideration of the defendant's not reserving a special mortgage on the land, so that he (the plaintiff) might mortgage it to the bank to obtain a loan on a long credit. The act of sale specified no mortgage. But Major Thomas obtained an order of seizure and sale for a balance due on the draft, of two hundred and eight dollars, and the amount of the first note for five hundred and eighty-three dollars and thirty-three cents. Against these

proceedings Howard obtained an injunction. He urged there was no privilege or mortgage retained to authorise them.

*Winn,* for the plaintiff and appellant, argued :

1. That the bill of exchange does not correspond with the one set out in the mortgage ; which was first drawn and made payable to John C. Pryor & Co., and by them endorsed to the defendant, who obtained an order of seizure and sale on it, without any other proof of the transfer than his own statement.

2. The transfer was a matter *en pais* which could not be proved to the judge at Chambers. 10 *Martin,* 222.

3. The defendant in his petition for an order of seizure and sale does not allege that the bill was protested, or that Howard was notified of its non-payment : Without such allegation and proof, Thomas could not have recovered payment in the *via ordinaria. a fortiori ;* without such allegation he could not resort to the *via executiva.*

4. The bill of exchange was received by Thomas on the condition that "if paid," to be a discharge : consequently Howard is discharged by the failure of Thomas to notify him of non-payment, and cannot be compelled to pay it even in an ordinary action. The receipt of a bill of exchange in payment extinguishes the vendor's privilege on the thing sold. 6 *Martin, N. S.* 636.

*Thomas,* in *propria persona,* for the defence :

1. Insisted that the order of seizure and sale obtained by him in this case, was founded on the act of sale ; and on the notes of Howard and Holmes ; but not on the draft of James E. Howard.

2. These being the grounds upon which the proceedings were instituted, the principles decided in the case of *Henry* vs. *Wray,* 10 *Martin,* 222, cannot apply to the endorsement of Stafford, as the authentic act furnished proof of the endorsement.

3. The act of sale does not reserve a special mortgage on the land sold; yet the vendor's privilege is not relinquished, which is sufficient to support an order of seizure and sale.

*Martin, J.* delivered the opinion of the court.

The plaintiff states that he and one Holmes, in 1829, purchased from the defendant a tract of land for seventeen hundred and fifty dollars, with interest at ten per centum from the first of March, 1828; and gave in payment a bill of exchange on William Bullitt, of New-Orleans, for seven hundred and fifty-eight dollars and sixty-seven cents, (of which one hundred and seventy-five dollars were for interest on the whole amount up to March 1st, 1829,) and two promissory notes payable to Leroy Stafford, and by him endorsed for five hundred and eighty-three dollars and thirty-three cents each, payable on the first of March, 1830 and 1831, with interest from the first of March, 1829. No special mortgage was retained by the defendant for the purchase money : But on the contrary, the deed expresses the facts as above set forth, and declares that the payment of eleven hundred and sixty-six dollars and sixty-seven cents, and interest, is secured by the two notes aforesaid. That the plaintiff thinking it might be expedient and necessary to mortgage the land, proposed to the defendant to forbear retaining any privilege or mortgage, and to be satisfied with personal security, to which the latter assented ; and the plaintiff accordingly gave Bullitt and Stafford as his sureties: Notwithstanding which, the said defendant has sued out a writ of seizure and sale, and his petition does not allege any notice to the plaintiff of the dishonor of the bill; and he claims the sale of the land for the payment of seven hundred and ninety-one dollars and sixty-seven cents, with interest from March 1st, 1829, *i. e.* for five hundred and eighty-three dollars and thirty-three cents, besides interest on the first note, and the balance of said sum of seven hundred and ninety-one dollars and sixty-seven cents, on account of the bill aforesaid, with interest. The petition concludes by a prayer for a writ to enjoin this sale, which accordingly issued.

Although a special mortgage be renounced, yet the vendor may exercise his privilege by the executory process, when it appears by evidence, that he was to retain his general lien.

CASES IN THE SUPREME COURT

The defendant pleaded the general issue, and in answer to interrogatories, put to him by the plaintiff, that early in 1828, he contracted with the plaintiff and Holmes for the sale of the land for seventeen hundred and fifty dollars, payable in cash or in three payments, adding interest at ten per centum from the first of March. That the vendees were put in possession, and made a crop in 1828; that the title was not given till some time in 1829. That previous thereto, the plaintiff mentioned his desire of making the first payment with the accrued interest by a draft, negotiating a loan in bank and paying the two last instalments, asked the defendant to facilitate this operation; and the latter agreed to give the title without reserving any special mortgage, provided, satisfactory security was given, and the tenor of the agreement expressed in the deed: so that he might retain the legal privilege of a vendor. With this the plaintiff was perfectly satisfied, and so was the defendant with the security given. The deed was accordingly so drawn and executed; the defendant never intending to divest himself of his legal privilege as vendor. The two notes were endorsed by Stafford to induce the defendant not to retain a special mortgage.

The injunction was dissolved, and the plaintiff appealed.

On the trial the plaintiff gave in evidence the notes and draft annexed to the petition for an order of seizure and sale.

The defendant gave in evidence the sale of the land, and the draft and notes given by the vendees.

The appellant's counsel has contended that the defendant's privilege was dissolved by his receipt of the draft and notes in payment, and relied on the case of *Abat* vs. *Syndics of Nolte et als.* 6 *Martin, N. S.* 636.

The deed shows that for the first instalment, on which a failure of payment is the ground of the order of seizure, the plaintiffs gave their draft, which is in the words of the deed, " when paid will be in full," &c. It is, therefore, clear that until the draft was paid, the defendant was the creditor of his vendees for the price or consideration of the sale, and if so, he was, therefore, a fair legal creditor.

It has been urged on the authority of the case of *Wray* vs. *Henry*, 10 *Martin*, 222, that the order of seizure and sale issued improperly, as the draft was not an authentic act, and the judge at his chambers had neither the authority nor the means of testing its genuineness. It has already been noticed that by the very words of the deed the draft was not a payment until its amount was actually received. Until then the consideration of the sale or price of the land was due on the authentic act of sale, the production of which established the existence and amount of the debts. The negative fact, the non-payment of it, was like in all similar cases, to be established by the creditor's oath.

WESTERN DIST.
October, 1831.

It is further urged, that the petition ought to have alleged a notice to the plaintiff of the dishonor of the draft. Nothing but the payment of the draft could affect the defendant's claim; because till then the deed said the price of the sale remained due. If through the defendant's laches the plaintiff received any injury, the latter is certainly entitled to remuneration. This he may demand by a separate action; and perhaps he might have pleaded it in the present case: but as he has not done so, we need not examine the question.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.